## WELLERDING v WEST NORWOOD BLDG & L CO

Ohio Appeals, Hamilton Co

Decided Feb 28, 1938

*See page 528 at Headnote 10.

530

Edwin G. Becker, Cincinnati and Alvin, Loeb, Cincinnati, for appellant.

Hauer & Topmoeller, Cincinnati, for appellee.

## OPINION

By HAMILTON, J.

Appellant, Henry Welerding, plaintiff below, brought his action for money damages against the West Norwood Building & Loan Company, appellee here.

In his petition plaintiff alleged that on May 14, 1935, he and his wife purchased seven shares o fthe capital stock of the defendant company, in the sum of $3,500, which was then the estimated value of said seven shares of the capital stock. The stock was not paid for at the time of purchase, but plaintiff and his wife agreed to pay on the principal weekly dues in a sum agreed upon with interest, upon this debt of $3,500, and in order to secure said payments they executed a mortgage in the sum of $3,500 to the defendant company on the 14th day of May, 1935, upon the real estate described in the petition. That the mortgage was duly recorded. That at the time of the execution of said mortgage, plaintiff, according to the terms thereof, assigned and delivered to the defendant company all insurance policies then in force or thereafter to be issued on the premises described, with the benefits to inure to the full extent of defendant's interests in said premises, and that said assignment and agreement conferred upon the defendant company the full right to renew and keep operative said policies of insurance and to assess against the plaintiff and his wife the cost of maintaining sufficient insurance upon said property to indemnify any loss therefrom.

Plaintiff further alleged that at the time of the assignment, he delivered to said defendant company all policies then in effect upon said premises, and that the policies had been out of his control and custody ever since said date, and that he did not know nor did he have any ordinary means of knowing the expiration date of the original policies, nor the date upon which to have them renewed; that he was never advised by the defendant that the policies were about to expire, nor that they had expired until after the loss complained of.

He alleges that on the 14th day of April, 1936, at twelve o'clock noon, a fire occurred on his said premises, through no fault of his, resulting in damages to the said premises in the sum of $1,500.

The petition contains the following allegation:

"Plaintiff says that before the aforesaid fire occurred, to-wit, on the 15th day of October, 1935, the insurance policies which he assigned and delivered to the defendant company, had expired, and that these policies were not renewed by the defendant company in accordance to their duty arising under said agreement entered into on the 14th day of May, 1935, and that at the time the fire from which the above referred to loss occurred, his premises were not insured, and that this fact was due entirely to the negligence of the defendant company; the negligence of the defendant company being in not renewing the policies in question assigned to them and left entirely within their care, control and custody, in accordance to the agreement between the parties, or in not informing the plaintiff that the policies were about to expire or had expired, in time for him to renew the insurance upon his said premises,

and not suffer financial loss above mentioned."

Plaintiff seeks judgment in the sum of fifteen hundred dollars against the defendant together with interest and costs.

The answer of the defendant admits its corporate powers, the purchase of the stock in the sum of $3,500, and the execution of the mortgage as alleged, the delivery of the policies of insurance then in force, and then denies generally all other allegations of the petition.

A jury was waived and the case was tried to the court. Upon the hearing of the cause, the trial court found on the issues in favor of the defendant and dismissed plaintiff's petition.

From that judgment, plaintiff appeals.

The plaintiff introduced four witnesses to prove his case, together with his pass book issued to him by the defendant company, and, on cross-examination, the constitution and by-laws of the company were introduced.

The defendant offered no evidence at the trial. It then and does now rely on the provision in the by-law, Section 31, which provides:

"When the directors see fit they may require any borrower to cause the building on mortgaged property to be insured against loss for the benefit of this company in some insurance company to be approved by them, in an amount which they shall name, and to keep the same insured during the continuance of the loan, and the policy of insurance properly indorsed by the company issuing the same shall be deposited with the secretary. Upon the failure of any borrower to insure said property as required, or upon expiration or cancellation of any policy deposited as aforesaid, the directors may insure the same at the expense of such borrower."

Defendant claims under this by-law that the obligation to keep the property insured was on the plaintiff and no obligation to secure renewals devolved upon it.

The plaintiff claims an agreement by which the defendant became the agent of the plaintiff to keep the policies, renew the insurance when necessary, and not to permit the insurance to expire. That in violation of the agreement, it negligently and carelessly permitted the insurance to expire, and failed to renew the same, thereby causing the loss and damage suffered.

To establish his case, plaintiff adduced the following evidence:

"A. Yes, sir, and Mr. Hauer read the deed to me and so then Mrs. McGee was there and as he read the deed to me she says 'now, everything is all right.' I said, 'how about the insurance?' Mrs. McGee said 'I have the insurance here and I will give that to Mr. Wellerding. It is of no value to me.' She gave that to me. Mr. Hauer read it and said 'everything is all right.' Mr. Sieberling said 'you will have to have fire and tornado insurance.' I said 'how about fire insurance.' He said, 'you will have to have both,' so * * *

"Mr. Hauer: Will you repeat what you said? I didn't hear a thing.

"A. Mrs. McGee had the insurance and she says to me 'I will give that to you, Mr. Wellerding. It is of no value to me. I will give that to you,' and you read it and said 'all right,' so then Mr. Sieberling come over to me and said 'you have to have tornado insurance.' I said 'I would like to have fire insurance also.' He said 'never mind, we will take care of all your insurance for you.' The next week I went out to make the payment, that is when he give me the receipt for the tornado insurance.

"The Court: Who was that, he said he would take care of all the insurance?

"A. Mr Sieberling.

"Q. Just to clarify the record, when Mr. Wellerding said 'you looked at my insurance,' he was indicating to Mr. Hauer. Did Mr. Sieberling specify any type of insurance he was going to look after for you?

"A. The fire insurance, yes, sir."

* * * *

"A. The president of the building, and he said 'yes, that is true, we had a meeting and we looked that up. It has been laying in the box nine months. I admit it is no good.' I said, What will you do? I wish I had known that.' He said, 'Well, I am sorry'—he put up both hands—'we are to blame. It is our bad negligence on our part,' he said. 'It is one of those things. I have been in the building thirty years,' and he said, 'it is one slipped up on us. I am going to have a meeting this evening.' I said, 'is the meeting in regard to me? I will be here.' He said, 'no, it is to take all these officers to task; that is something they should never have let get away from them.' He said, 'That is very bad negligence on our part.' I said, 'I will go to the fire secretary.' I said, 'What about the the state secretary?' He said,

He is going to get it too. It is terrible.' He said, 'I am sorry for you but I will lend you $1,500.' I said, 'I couldn't afford to borrow no $1.500.' I said, 'We haven't a place to live in.'

"The Court: Who was the president?

"A. Griewe, that is the President; so he said, 'The only thing we could do would be to go ahead and fix it ourselves.' I said, 'You hold the mortgage. You ought to give us our insurance policy, or had them renew it. It says in the book it should be renewed, or if it don't you should.' He said, 'Yes, I have been in the building thirty years and this is one thing slipped up on us.' He said, 'I admit the policy laid there nine months without attention.' He said, 'Well, I can't do anything about it; it is just a bad error of ours.' I said, 'Am I responsible for your bad errors?' He said 'You know that will happen; it will never happen again." He said, "Take out a new policy. That is all I can do for you. I guarantee I will watch this policy myself.' "

Plaintiff introduced his pass book, given him by defendant company, in which on page 1, paragraph 5 it is provided:

"That when borrower's insurance expires, a renewed policy must be delivered to secretary before noon of day old policy expires, or this company will have policy issued at borrower's expense."

As above stated, defendant offered no evidence, and relied solely on the words "may issue" in the by-laws, and argue that the provision merely gives the company the right to renew the insurance upon failure of the borrower to do so, but creates no obligation on the part of the company to look after the insurance. That the word "may" is merely permissive.

The question is: Was there under all the facts a mandatory duty to keep the insurance alive on the property mortgaged for the mutual protection of both the mortgagor and mortgagee, and did the defendant agree with plaintiff to act as the agent of plaintiff in the matter, and did it negligently and carelessly fail in that duty, thereby causing the fire loss to plaintiff?

The plaintiff established by evidence the taking possession of the policies by the defendant, and the permanent retention of them by defendant, and the promise to take care of all insurance.

Plaintiff never had the policies in his possession and had no knowledge as to the dates of expiration. He relied upon the promise of defendant to look after them. The promise was made at the time of the execution and delivery of the mortgage. The fire policy was turned over at that time and the secretary of the company agreed to take out the tornado policy for him and charge him with it, and would look after all insurance. It is very apparent that the effect of the whole thing was for the mutual benefit of both parties. The defendant company in taking and keeping possession of the policies accepted a trust under the agency part of the transaction, and grossly neglected to perform its duties.

Plaintiff, appellant, cites the case of **Geswine, Jr., v Star Bldg. & Loan Co., 3 O.C.C. (N.S.) 279,** as strongly supporting his right to recover in this action. We are in accord with the pronouncement in that case. The facts are quite similar. The appellee seeks to distinguish the Geswine case from the case under consideration by the fact that the by-law of the loan company in the Geswine case provided "that all renewals on policies so deposited shall be made by the association, etc." This provision created a mandatory duty on the part of the loan company in writing, while in the instant case the duty was established by oral evidence supplemented by the pass-book and the written matter therein.

The principal in both cases is that a mandatory duty was imposed, as a part of the whole transaction, upon the loan company to keep the insurance policies safe and keep them renewed at the cost of the borrower.

The facts are not in dispute. Plaintiff proved the agency, the gross dereliction of duty on the part of the company, the fire at his home, the real estate in question, and the damage. We conclude the company is liable therefor.

The judgment of the Common Pleas Court is reversed, and coming now to render the judgment that the Common Pleas Court should have rendered, we find for plaintiff, appellant, against the defendant, appellee, and give him judgment for $1,500, damages and the costs of this action.

ROSS, PJ, and MATTHEWS, J, concur.